UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

NOBLE POTTER, III,

    Plaintiff,

    v.     CAUSE NO. 3:23-CV-39-DRL-JEM

A. ALLMON *et al.*,

    Defendants.

## OPINION AND ORDER

Noble Potter, III, a prisoner without a lawyer, filed a complaint. ECF 2. Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must nevertheless give a *pro se* complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

On August 13, 2022, at approximately 7:00 am, Mr. Potter alleges he asked Officer Terry, who is not named as a defendant, if he could use the restroom because he had been held in a cell he describes as the "cage" since approximately 11:50 pm the night before. ECF 2 at 2. Officer Terry placed Mr. Potter in handcuffs and escorted him to the facilities.

On the way back, they stopped at the nurse's station to inquire when Mr. Potter would be released to his normal cell. RN T. Turner told him, "I don't care about your life. You'll go back when I let you." *Id*. Angered by this response, Mr. Potter grabbed Nurse Turner's computer and "smashed it on [the] desk." *Id*. Officer Terry said he was calling backup, and both he and Nurse Turner ran out of the office. Mr. Potter then walked through the door and sat on a chair near the officers' station. Officer Terry returned with Officer A. Allmon; and, although Officer Terry pointed out that he was still handcuffed, Officer Allmon "ran and tackled [Mr. Potter] out of [the] chair, put both hands around [his] neck and started chocking [him]." *Id*. at 3. While he was being choked, Nurse Turner grabbed one of Officer Allmon's pepper spray cans, and "sprayed the whole can in [his] eyes, mouth, and nose." *Id*. Mr. Potter was then placed in "SMC,"[1] where he was not given a shower for eight days. *Id*. He claims the incident caused him to have headaches, pain in his elbow, and anxiety. He has sued Officer Allmon and Nurse Turner for monetary damages.

The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Deference is given to prison officials when the

---

[1] It is not clear whether this was a medical or disciplinary segregation unit.

2

use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Jails are dangerous places, and security officials are tasked with the difficult job of preserving order and discipline among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). It is important that prisoners follow orders given by guards. *Id.* at 476-77 (citing *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). To compel compliance—especially in situations when officers or other inmates are faced with threats, disruption, or aggression—the use of summary physical force is often warranted. *Id.* at 477 (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). Of note, the use of pepper spray against an inmate under such circumstances does not constitute a *per se* violation of the Eighth Amendment. *See id.* at 475–76; *see also Soto*, 744 F.2d at 1271. That is not to say, however, that such justification exists "every time an inmate is slow to comply with an order." *Lewis*, 581 F.3d at 477. Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the injury suffered by the prisoner. *Hendrickson*, 589 F.3d at 890.

Here, Mr. Potter claims Officer Allmon attacked him and Nurse Turner sprayed him with chemical spray while he was handcuffed and sitting in a chair in a compliant manner. Though later investigation may reveal that both defendants had legitimate reasons for using force on Mr. Potter, giving him the benefit of the inferences to which he

3

is entitled at this stage, he has stated Eighth Amendment excessive force claims against Officer Allmon and Nurse Turner.

Mr. Potter also appears to allege that his placement in the "cage" violated his rights. The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "[I]nmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005) ("reassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest")); *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("prisoners possess neither liberty nor property in their classifications and prison assignments"); *Healy v. Wisconsin*, 65 Fed. Appx. 567, 568 (7th Cir. 2003) ("inmates do not have a protected liberty interest in a particular security classification") (citing *Sandin*, 515 U.S. at 486).

Although later cases have questioned the conclusion that placement in nonpunitive segregation can "*never* implicate a liberty interest," *see Williams v. Brown*, 849 Fed. Appx. 154, 157, n.3 (7th Cir. 2021) (emphasis added), timing plays a part in the analysis, even when conditions are significantly harsher, *see, e.g., Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-98 & n.2–3 (7th Cir. 2009) (collecting cases that held

4

segregation of two to ninety days does not trigger due process concerns and stating that "a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh") (emphasis added); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (finding that up to ninety days in segregation does not affect liberty); *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (recognizing "duration" is a component that plays a part in determining whether a liberty interest exists).

Here, Mr. Potter doesn't allege his stay in the "cage" extended the duration of his confinement. He simply takes issue with his seven-hour placement there because he wasn't given water or allowed to use the restroom during that time. These allegations, which occurred over the course of only seven hours, don't amount to an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484; *Marion*, 559 F.3d at 697-98 & n.2–3 (collecting cases regarding timing); *Lekas*, 405 F.3d at 610–14 (even ninety-day placement in disciplinary segregation where inmate was "prohibited from participating in general population activities," deprived of contact with other inmates, and barred from "educational and work programs" did not trigger due process concerns). Accordingly, Mr. Potter has not stated any valid Fourteenth Amendment due process claims regarding his stay in the cage.[2]

---

[2] Mr. Potter also alleges that being held there for more than four hours violated IDOC policy. He doesn't state what policy was allegedly violated. More important, even if he had, policy violations do not amount to constitutional violations. *See Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019) ("[A] constitutional suit is not a way to enforce state law through the back door."); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"); *Conner v. Hoem*, 768 Fed. Appx. 560, 564 (7th Cir. 2019) ("In any case, the Constitution does not require state

Even if an inmate's placement itself does not trigger any due process concerns, he may still have a claim regarding the conditions of his confinement under the Eighth Amendment.[3] "Although the Constitution does not mandate comfortable prisons, it does mandate humane ones." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quotations and citation omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). The Eighth Amendment requires inmates to be provided with "humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care" among other necessities. *Thomas*, 2 F.4th at 719 (quoting *Farmer*, 511 U.S. at 832). "Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. To satisfy this standard, "the official must have actually known of and consciously disregarded a substantial risk of harm." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022).

---

actors to enforce their own policies and regulations.") (citing *Garcia v. Kankakee Cty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002)). Therefore, Mr. Potter has not stated a claim by alleging the defendants failed to follow their own policies.

[3] *See Townsend*, 522 F.3d at 772-73 ("The issue of cell conditions in TLU is best analyzed as a claim brought under the Eighth Amendment.").

Mr. Potter simply alleges he was not allowed to use the restroom or given water overnight (for approximately seven hours). He doesn't allege Officer Allmon or Nurse Turner had anything to do with his initial placement in the cage or what occurred while there, so he has not plausibly alleged they were deliberately indifferent to his needs. Moreover, the fact that he wasn't given water or allowed to use the restroom overnight does not demonstrate the conditions were sufficiently serious to deny him life's necessities. *See, e.g., Sanders v. Kingston*, 53 Fed. Appx. 781, 783 (7th Cir. 2002) (short deprivations that are not "extreme" in nature fail to satisfy the objective component of an Eighth Amendment conditions-of-confinement claim) (citing *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001)); *White v. Knight*, 710 Fed. Appx. 260, 261–62 (7th Cir. 2018) (though "long-term deprivations of modern toilet facilities" can potentially violate the Eighth Amendment, "temporary imposition[s]" do not); *Hernandez v. Battaglia*, 673 F. Supp. 2d 673, 676–77 (N.D. Ill. 2009) (collecting cases and finding that not being given water or being allowed to use the bathroom during a ten-hour shakedown did not violate the Eighth Amendment). Mr. Potter also alleges he was not given a shower for eight days after he was placed in "SMC." Again, he does not allege the defendants were responsible for or even knew of the shower situation. Furthermore, "restricting inmates to weekly showers does not violate the Eighth Amendment." *Conner v. Hoem*, 768 Fed. Appx. 560, 563–64 (7th Cir. 2019) (citing *Jaros v. Ill. Dep't of Corrs.*, 684 F.3d 667, 671 (7th Cir. 2012)). Therefore, Mr. Potter has not stated any plausible Eighth Amendment conditions of confinement claims either. *See Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face).

7

For these reasons, the court:

(1) GRANTS Noble Potter, III, leave to proceed against Officer A. Allmon and RN T. Turner in their individual capacities for compensatory and punitive damages for subjecting him to excessive force on August 13, 2022, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer A. Allmon at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 2);

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) RN T. Turner at Centurion Health of Indiana, LLC, with a copy of this order and the complaint (ECF 2);

(5) ORDERS the Indiana Department of Correction and Centurion Health of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Officer A. Allmon and RN T. Turner to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

September 11, 2023              *s/ Damon R. Leichty*
                                Judge, United States District Court